JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Darwin C. Rutledge ("plaintiff"), appeals the trial court's affirmation of an order of the Superintendent of the Ohio Department of Insurance ("ODI") finding plaintiff in violation of R.C. 3905.49(B)(18), Ohio Administrative Code 3901-01-18(D)(2) and R.C. 3905.14(B)(2) and (9). For the reasons set forth below, we affirm.
 {¶ 2} On March 11, 2004, the ODI issued a five count Amended Notice of Opportunity for Hearing ("Notice") against plaintiff. Count One of the Notice alleged that plaintiff violated former R.C. 3905.49(B)(18) by falsely certifying that an application for insurance was signed in his presence. Counts Two through Five alleged violations of Ohio Administrative Code 3901-01-18(D)(2) and R.C. 3905.14(B)(2) and (9). These violations arose from plaintiff's alleged issuance of fraudulent Ohio FAIR Plan Homeowners Insurance Policy Declaration Pages.
 {¶ 3} Plaintiff requested a hearing on the Notice of Opportunity. At the hearing on July 7, 2004, plaintiff and ODI presented evidence in support of their contentions. A summary of the proffered evidence follows.
 {¶ 4} Count One of the Notice concerned an application for automobile insurance issued to Don Johnson and Tracy Rookard. Johnson sought to purchase from plaintiff insurance for an automobile. Johnson did not own the automobile. Instead, it was leased to his fiancé, Rookard. As she was financially responsible for the automobile, Rookard had an insurable interest in the automobile. Accordingly, plaintiff informed Johnson that Rookard's signature was required to complete the application. Plaintiff also telephoned Rookard to explain the need for her signature. Soon thereafter, Johnson returned a completed application for insurance to plaintiff. The application contained signatures of both Johnson and Rookard. Immediately below Rookard and Johnson's signatures, plaintiff signed as the producing agent. By signing the document, plaintiff attested to the Producer's Statement, which stated:
 {¶ 5} "I certify that to the best of my knowledge, all information contained herein is correct; the statements herein are those of the applicant who has signed in my presence; I have explained all coverages and options to the applicants; and that the applicant and I are retaining a duplicate signed copy hereof. I am legally qualified to submit this application on behalf of the applicant."
 {¶ 6} Plaintiff conceded that he did not witness Rookard sign the application. After submitting the application and placing coverage for the automobile, Rookard telephoned plaintiff demanding cancellation of the policy because her signature was a forgery.
 {¶ 7} The remaining four counts of the Notice concern plaintiff's issuance of two FAIR Plan Declaration Pages.
 {¶ 8} The circumstances surrounding the first issuance of a simulated Ohio FAIR Plan Homeowners Insurance Policy Declaration Page occurred sometime before November 2003. During this time, Timothy O'Brien and Lisa Fouts came to plaintiff's office and filled out an application for homeowner's insurance. Although plaintiff was unable to obtain a photograph of the property the two were seeking to purchase, plaintiff sent an application and deposit to the FAIR Plan without the photograph, knowing that FAIR Plan would reject it. As expected, Fair Plan rejected the application.
 {¶ 9} Plaintiff then whited out portions of the Declaration Page of a homeowners insurance policy previously issued by FAIR Plan to one of his clients and inserted the information concerning O'Brien, Fouts and their property. Essentially, the Declaration Page looked the same as an authentic FAIR Plan Declaration Page. The only difference between the two Declaration Pages simulated Declaration Page and an authentic one was that plaintiff inserted the letters "TBD" in the space entitled "Policy Number." Plaintiff testified that he intended "TBD" to mean "to be determined."
 {¶ 10} The circumstances surrounding the second issuance of a Ohio Fair Plan Declaration Page occurred sometime in January of 2004. At that time, a representative of a mortgage company requested an insurance policy from plaintiff for Raed Farah, who needed the policy to close a loan.
 {¶ 11} In response to this request, plaintiff submitted a simulated FAIR Plan Homeowners Insurance Policy Declaration Page to the title company that was closing the loan. The Declaration Page appeared to be an authentic FAIR Plan Homeowners Insurance Policy Declaration Page for Farah and the property he was purchasing. Again, the only difference between this Declaration Page and an authentic one were the letters "TBD" inserted in the space entitled "Policy Number." Plaintiff stated "I then faxed a copy of a declaration page I created not giving it a policy number to help the matter at closing."
 {¶ 12} In defending the allegations of falsifying the Declaration Pages for O'Brien, Fouts and Farah, plaintiff testified that he spoke to Barbara Bryant, a policy services representative for FAIR Plan, regarding difficulties he had encountered with mortgage lenders in the Cleveland area who were not satisfied with the FAIR Plan application. After speaking with Bryant, plaintiff claims he created a simulated FAIR Plan Homeowners Insurance Policy Declaration Page with all the actual insured's information whited out and faxed it to Bryant. Plaintiff testified that Bryant reviewed the fax and found no problems with plaintiff using the form.
 {¶ 13} Bryant denied plaintiff's allegations and testified that she never conversed with plaintiff about problems obtaining coverage in Cleveland and never gave plaintiff permission to use simulated FAIR Plan Declaration Pages.
 {¶ 14} Ellen Leslie, Vice President of Operations for FAIR Plan, testified that Bryant is a policy service representative with no underwriting responsibilities or authority. Furthermore, no one at FAIR Plan would have authority to approve of plaintiff issuing simulated FAIR Plan Homeowners Insurance Policy Declaration Pages.
 {¶ 15} Plaintiff testified that the simulated Declarations Pages he prepared, although substantially identical to an authentic Declaration Page, were only submitted as "proof they applied for insurance" simply because they had the letters "TBD," instead of the policy number.
 {¶ 16} After the hearing, both parties filed post hearing briefs in support of their positions. Based upon his review of the evidence and the briefs, the Hearing Officer issued a report and recommendation finding that ODI presented reliable, probative and substantial evidence in support of all five counts.
 {¶ 17} The Hearing Officer recommended that plaintiff's license be suspended for 180 days in Ohio and that administrative costs be assessed to plaintiff in the amount of $2,500. On November 4, 2004, the Superintendent of ODI, adopted the report and recommendation of the Hearing Officer and imposed the sanctions suggested.
 {¶ 18} Plaintiff appealed ODI's decision to the Cuyahoga County Court of Common Pleas. On October 26, 2005, the trial court affirmed the ODI suspending plaintiff's license to sell insurance for 180 days and assessing $2,500 in administrative costs.
 {¶ 19} Plaintiff now appeals and asserts two assignments of error for our review. Before addressing the merits of plaintiff's assignments of error, we note that as a procedural matter, we review the trial court's decision in accordance with the principles set forth in Peterson v. Ohio Department ofInsurance, 162 Ohio App.3d 407, 410-411, 2005-Ohio-4002,833 N.E.2d 798. In Peterson, this court concluded that:
 {¶ 20} "When reviewing the Common Pleas Court's determination, the appellate court determines only whether the court abused its discretion in finding whether the agency's order is supported by such evidence. `The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable.' `Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment.' (citations omitted)."
 {¶ 21} Hence, this court determines whether the trial court abused its discretion in rendering its decision.
 {¶ 22} Keeping this standard in mind, we will now address the merits of plaintiff's two assignments of error.
 {¶ 23} Plaintiff's first assignment of error states:
 {¶ 24} "The trial court abused its discretion in affirming the order of the Superintendent of the Ohio Department of Insurance dated November 4, 2003. (Order, October 26, 2005)."
 {¶ 25} Within this assignment of error, plaintiff maintains that the trial court abused its discretion in affirming the ODI's decision. Plaintiff argues that because the trial court failed to provide any reasoning for its decision and instead made a conclusory statement affirming the decision, the trial court's decision must have been unreasonable, arbitrary and capricious and not supported by reliable, probative and substantial evidence. We find plaintiff's argument without merit.
 {¶ 26} R.C. 119.12 provides, in pertinent part:
 {¶ 27} "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *"
 {¶ 28} In Ganley, Inc. v. Ohio Motor Vehicle Dealers Board
(Sept. 29, 1994), No. 93APE12-1646, the court was presented with a similar argument proposed by the plaintiff here. In Ganley,
the appellant asserted that the trial court erred by issuing a one paragraph decision affirming the board's decision. The court disagreed with the appellant's argument and held that "R.C.119.12 does not impose upon the common pleas court the duty to issue findings of fact and conclusions of law or to issue a detailed decision. Consequently, the decision and judgment order herein complied with R.C. 119.12."
 {¶ 29} As did the court in Ganley, we find that the trial court's decision, while brief, was in accordance with R.C.119.12. The trial court stated in its Judgment Entry dated October 26, 2005:
 {¶ 30} "This court hereby affirms the decision of the Superintendent of the Ohio Department of Insurance, and finds that the decision is supported by reliable, probative and substantial evidence and is in accordance with law. Court costs assessed as directed."
 {¶ 31} By expressly finding that the ODI's decision was supported by reliable, probative and substantial evidence and was in accordance with the law, the court necessarily conducted an independent review of the record and made factual and legal findings. Accordingly, plaintiff's first assignment of error is without merit.
 {¶ 32} Plaintiff's second assignment of error states:
 {¶ 33} "The trial court abused its discretion in finding the decision of the Superintendent of the Ohio Department of Insurance is supported by reliable, probative, and substantial evidence. (Order, October 26, 2005)."
 {¶ 34} Within this assignment of error, plaintiff asserts four separate sub-arguments. Plaintiff's first sub-argument states:
 {¶ 35} "The decision of the Superintendent of the Ohio Department of Insurance that Appellant violated Ohio Revised Code _3905.49(B)(18) is not supported by reliable, probative and substantial evidence."
 {¶ 36} Former R.C. 3905.49(B)(18) states in relevant part:
 {¶ 37} "The superintendent may suspend, revoke, or refuse to issue or renew any license as an agent, surety bail bond agent, surplus line broker, or limited insurance representative, or impose any other sanction authorized under this chapter for one or more of the following reasons:
 {¶ 38} "* * *
 {¶ 39} "(18) Engaging in any fraudulent, dishonest, or coercive practice in connection with the business of insurance."
 {¶ 40} Plaintiff contends that his conduct was not a fraudulent, dishonest or coercive practice pursuant to R.C.3905.49(B)(18). Plaintiff argues that the Producer's Statement, signed by him, only requires him to witness the signature of the applicant for insurance. More specifically, the Producer's Statement states:
 {¶ 41} "I certify that to the best of my knowledge, all information contained herein is correct; the statements herein are those of the applicant who has signed this application in my presence; I have explained all coverages and options to the applicant; and that the applicant and I are retaining duplicate signed copy hereof. I am legally qualified to submit this application on behalf of this applicant."
 {¶ 42} Plaintiff asserts that Johnson was the only applicant because in one part of the application Johnson is listed as the applicant and Rookard is not. Therefore, plaintiff argues, as Rookard is not an applicant of insurance, plaintiff did not need to witness Rookard sign the application. We find plaintiff's argument without merit.
 {¶ 43} It is uncontested that Rookard has an insurable interest in the vehicle. In fact, plaintiff concedes that because Rookard executed the lease of the vehicle, both her and Johnson needed to be listed as insureds on the vehicle. Thus, it is immaterial that Rookard was not listed under the section "Applicant." She was listed on the application as an insured on page 1 and her signature was placed as an applicant on pages 2 and 5. Furthermore, Rookard's signature appears on page 3 where she rejects uninsured motorists coverage. Accordingly, Rookard is clearly an insured and thus an applicant for insurance.
 {¶ 44} As we have found that Rookard is an applicant for insurance and plaintiff admits that on or about February 7, 2002, plaintiff falsely certified that Rookard signed an application for automobile insurance in his presence, we find that plaintiff engaged in a fraudulent and dishonest practice in connection with the business of insurance. Accordingly, the trial court did not abuse its discretion in finding that the ODI's decision that plaintiff violated R.C. 3905.49(B)(18) is supported by reliable, probative and substantial evidence. Appellant's first sub-argument is without merit.
 {¶ 45} In the interests of convenience, we will next address plaintiff's second and third sub-arguments together. Plaintiff's second sub-argument states:
 {¶ 46} "The decision of the Superintend [sic] of the Ohio Department of Insurance that Appellant violated Ohio Administrative Code Section 3901-1-18(D)(2) is not supported by reliable, probative, and substantial evidence."
 {¶ 47} Plaintiff's third sub-argument states:
 {¶ 48} "The decision of the superintendent of the Ohio Department of Insurance that Appellant violated Ohio Revised Code ___ 3905.49(B)(2) and 3905.49(B)(9) is not supported by reliable, probative, and substantial evidence."
 {¶ 49} Ohio Administrative Code Section 3901-01-18(D)(2) states in relevant part:
 {¶ 50} "(D) Insurance agents.
 {¶ 51} "* * *
 {¶ 52} "(2) No licensed agent, although licensed to represent one or more member insurers of the association, shall hold himself out as an agent of the association or have any authority to bind any risk for the association."
 {¶ 53} R.C. 3905.14(B)(2) and (9) state in pertinent part:
 {¶ 54} "§ 3905.14. Grounds for disciplinary action; procedure; actions by attorney general.
 {¶ 55} "* * *
 {¶ 56} "(B) The superintendent may suspend, revoke, or refuse to issue or renew any license of an insurance agent, assess a civil penalty, or impose any other sanction or sanctions authorized under this chapter, for one or more of the following reasons:
 {¶ 57} "* * *
 {¶ 58} "(2) Violating or failing to comply with any insurance law, rule, subpoena, consent agreement, or order of the superintendent or of the insurance authority of another state;
 {¶ 59} "* * *
 {¶ 60} "(9) Using fraudulent, coercive, or dishonest practices, or demonstrating incompetence, untrustworthiness, or financial irresponsibility, in the conduct of business in this state or elsewhere."
 {¶ 61} The record reveals that plaintiff issued one fraudulent Declaration Page for Ohio FAIR Plan Homeowners Insurance Coverage for Timothy O'Brien and Lisa Fouts, and one fraudulent Declaration Page for Raed Fara. In so doing, plaintiff thereby falsely represented that he had authority to bind the Ohio FAIR Plan in violation of Rule 3901-01-18(D)(2).
 {¶ 62} Plaintiff first contends that he did not violate the aforementioned rule and statutes because the Declaration Pages he prepared were only submitted as proof that O'Brien, Fouts and Fara applied for insurance, not as proof of having insurance. In support of his argument, plaintiff maintains that while the Declaration Pages he prepared were substantially identical to authentic Declaration Pages, because the Pages had the letters "TBD" instead of a policy number, they were only submitted as proof the individuals applied for insurance, not that they had obtained coverage.
 {¶ 63} We find plaintiff's argument unpersuasive. Plaintiff has extensive experience with home loan closings involving FAIR Plan coverage. Additionally, plaintiff failed to white out Ellen Leslie's signature of approval on both of the Declaration Pages, which is the final act in approving a coverage under the FAIR Plan. Finally, plaintiff conceded that an authentic Declaration Page from a FAIR Plan policy would be proof of insurance and could be presented at a mortgage closing to document proof of insurance. In light of these facts, we find that the reliable, probative and substantial evidence establishes that plaintiff communicated to the title companies that the O'Brien, Fouts and Farah Declaration Pages were legitimate documents issued by Ohio FAIR Plan in order to show proof of insurance.
 {¶ 64} Plaintiff next contends that he did not violate the above cited provisions because the title companies were aware that the Declaration Pages were fabricated and that Barbara Bryant, a customer service representative with the FAIR Plan, approved the issuance of the fabricated Declaration Pages. Plaintiff's argument is without merit.
 {¶ 65} First, Bryant denies ever providing plaintiff with the approval to issue a fabricated Declaration Page. Furthermore, assuming arguendo that Bryant had given plaintiff permission to fabricate the two Declaration Pages, Bryant did not have the authority to grant permission to use Ellen Leslie's signature, which is needed to execute both of the Declaration Pages. Leslie further confirmed that she did not authorize the use of her signature on those documents.
 {¶ 66} Because we find that plaintiff fabricated two Homeowners Insurance Policy Declaration Pages, we conclude that the trial court did not abuse its discretion in finding that reliable, probative and substantial evidence established that plaintiff's conduct amounted to fraudulent and dishonest practice in violation of Ohio Administrative Code Section 3901-01-18(B)(2) and R.C. 3905.14(B)(2) and (9) .
 {¶ 67} Plaintiff's last sub-argument states:
 {¶ 68} "The Superintendent of Insurance's determination the Appellant's Ohio Insurance Agent License is to be suspended for 180 days and assessed administrative costs in the amount of $2,500.00 is not supported by the record."
 {¶ 69} Within this sub-argument, plaintiff maintains that because ODI has not proffered evidence establishing he violated Ohio Revised Code and Ohio Administrative Code, ODI's determination to suspend plaintiff's insurance license and assess administrative costs in the amount of $2500.00 was in error. As we have found that plaintiff did violate the aforementioned rules and that the sanctions imposed were within the statutory range promulgated by R.C. 3905.14(B), we find plaintiff's argument without merit. Accordingly, plaintiff's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR, J. and JOSEPH J. NAHRA, J.,*
CONCUR.
* (Sitting by Assignment: Judge Joseph J. Nahra, Retired, of the Eighth District Court of Appeals).